Ladies and gentlemen, please rise. This Honorable Appellate Court of the 3rd Judicial District of the State of Illinois is now in session. The Honorable Joseph P. Heddles presiding. Please be seated. Thank you. Will the clerk please call our first case. Thank you. Before we begin today, I'd like to make an announcement from the bench. Justice Heddles is unfortunately unable to be with us today due to unforeseen circumstances, but he will have the benefit of your full argument because it is being recorded and he will be a fully participating member of this panel of the appellate court. So we may begin. Mr. Piles. May it please the court, counsel, my name is Scott Piles. I represent the Will County Clerk, Annette Parker, in this matter. Justices, there are essentially two issues that are involved in this case, and they both involve interpretations of the Illinois Election Code. First, Section 9-30 of the Illinois Election Code provides, in part, the election authority shall not place upon the ballot the name of any candidate appearing on this list for any office in any election while the penalty is unpaid. There's an exception to when this occurs. Unless the candidate has requested a hearing and the board has not disposed of the matter, and then by the date of certification, and certification being the ballot certification. Second provision of the Illinois Election Code, 7-61, in part, any vacancy and nomination occurring after certification, but prior to 15 days before the general election, shall be filled within 8 days after the event creating the vacancy. Now, it's going to be a little unusual. I usually spend a lot of time talking about the cases that may interpret these sections. Unfortunately, 9-30 has one case where it's talked about, and it is a Rule 23 decision out of the First District, Washington versus Winston. So, I will discuss that case a little bit. It's in the brief. But essentially, in this particular case, the plaintiff, Cesar Guerrero, ran for Joliet City Council in 2021, formed a campaign committee, received donations, and under the Illinois Campaign Disclosure Act contained within the Election Code, you are to file quarterly reports of donations and money spent and so forth. Mr. Guerrero did not do that on several occasions. The Illinois State Board of Elections fined his campaign committee and him for repeated violations of failing to file campaign disclosure reports. The Illinois State Board of Elections had a hearing or issued a decision showing on multiple occasions that he had not complied with the Campaign Disclosure Act. Eventually, at some point, his campaign committee was terminated. Now, Mr. Guerrero, pursuant to the Election Code, began receiving letters that he was not going to be on the ballot as long as his Illinois State Board of Elections fines were unpaid. I believe, and it's in the record at C-115 through 119, the letters that he received indicating, showing the act, the letter starts out with the recitation of Section 9-30. Then, it goes into the fact that if you do not have your board fines paid by whatever the date of the election ballot certification was for that particular election, it is in the thing, and I will quote directly from the letter he received on October 29, 2004, is the language you're about to quote in 9-30. Now, what I read in the beginning is directly from the statute. Right. How about the end? Is ballot certification, is that in 9-30? To talk about? No, ballot certification, I believe, is dealt with in another section of the Election Code. It is referenced. Why? Because 9-30 just says that the name cannot be placed on the ballot while the penalty is unpaid. The second attempt to place Mr. Guerrero's name on the ballot, this was no longer an impediment. So, why does 9-30 preclude placing the name on the ballot at that point? Because, Elliot, if you look at Section 9-30, there's a deadline. There is a deadline when this penalty needs to be paid by ballot certification. That is the last section of the ballot forfeiture provision in 9-30. There's a deadline. Now, why is that deadline important? If we were to allow a candidate who has an unpaid fine, who got a letter like Mr. Guerrero did in October that said, you have to have these fines paid, or if you don't have them paid by ballot certification, you will not be on the ballot. There's a deadline in the statute. Why is that there? Because it takes the clerks, all 102 clerks here in Illinois, it takes time for them now to program the ballots. They have to program. This is discussed in the record at some of the hearings. There's a process that the clerks have to go through to program the computers so they can print out the ballots. They have to have the ballots printed. They've got to go overseas. There's early voting. The election code has made it very difficult on the clerks. There's not a lot of time. But, if anything possible, 761 contemplates exactly this situation. I mean, if for whatever reason, a death or in this case, somebody's disqualified to be on the ballot, I mean, it still allows for a late placement of a name on the ballot. And they're going to have to figure out a way to do it. And they do. 761, if there is a vacancy, especially in this case when there was a vacancy created by the fact that he did not pay his fines by the ballot certification date, they have eight days, eight days for the committee to appoint somebody to fill that vacancy. That wasn't even followed here. So, I agree. There's a process. But then I think that in most cases, that's an exceptional circumstance. In this particular case, and I think that the deadline in the statute means something, you are indicating to the candidates that have the unpaid fines, you've got to pay by the ballot certification date. Otherwise, you're not going to be on the ballot. That's what the letter to Mr. Guerrero said from the State Board. That was the guidance that was given from the State Board to my client, the county clerk. If there is somebody that is not on, that is on the ballot forfeiture list by the ballot certification date, they are not going to be on the ballot. And that's the guidance from the State Board. Now, obviously, this court is not bound by the administrative agency's interpretation of the statute. However, the Illinois Election Code does charge the Illinois State Board of Elections with administering the Campaign Disclosure Act. In the record, there is the guidance of the election authority indicating that if somebody is not or that is on the ballot forfeiture list by the ballot certification date, they cannot be on the 2025 Consolidated Election Ballot. He was still on the forfeiture list on the ballot certification date in this case, on January 23rd. So what happened, he did not pay his fines. Only Mr. Guerrero, out of all the people that is involved in this case, only Mr. Guerrero knew that he had to have those fines paid by January 22nd, the date before the ballot certification. He got a letter indicating that that must be done. It was not news to Mr. Guerrero because he had gotten letters previous to this that are saying if you do not have, if you have fines that are unpaid to the State Board, you will not be on the election ballot. Now, here, Mr. Guerrero went past that date. I think a key, and I think it's something the trial court looked at, well, the county clerk sent an email to the township clerk indicating one of the candidates on the ballot that you've certified is on the ballot forfeiture list and they're not going to be on the ballot. In his decision, the trial court took that as the event that began the clock ticking on filling the vacancy. If we were to follow the trial court's reasoning, if the county clerk had sent an email two weeks after this, just as a courtesy to let the person know a candidate on the ballot you certified is not on, they're on the ballot forfeiture list, according to the trial court's reasoning, the clock would start ticking at that date. So the key question, at least the second part, is when does the clock start ticking on filling the vacancy in this case? And the clock started ticking on January 23rd, the date of ballot certification when he was rued, which, by the way... Would your argument be the same if the township had picked a different candidate, someone besides Mr. Guerrero? You'd still be precluding them from placing someone on the ballot? Yes, because they were outside, Justice Brennan, they were outside the date for the election code. And I understand, I understand looking at it, it seems harsh. Well, what are they going to do within eight days? The difficulty, again, the constraints put on the clerks, preparing the ballots, programming the ballots, getting them printed so we can get them over to the soldiers that are overseas to allow for the early voting, they have to have time to prepare these ballots. And I do understand that 761 does allow for the filling of a vacancy. But what we're talking about here is what is the event? 761 says the event creating the vacancy. In the trial court, in the plaintiff's position, the event creating the vacancy started when the email went out from the colonic clerk telling the township clerk, one of your candidates is on the ballot forfeiture list. He's not going to be on the ballot. That's not the event that started the clock ticking. The event starting the clock ticking was the fact that he had not paid his fines. He was on the ballot forfeiture list on the date of ballot certification. There is no dispute that he should have been removed. They don't dispute that. They don't dispute that he did not pay the fines by the ballot certification date. None of that is in dispute. Granted, I understand the intuitive thought while he paid his fines. That's the purpose. We want to get the fines paid. And the language in the statute. And all of the language of the statute with the exception that there's a deadline. There's a deadline in the statute. The fine must be paid by the date of ballot certification. Justice, if we were to go with the trial court's reasoning and the plaintiff's position, how long would that deadline be? Would Mr. Burrow have been able to pay it two weeks late and still be able to be entitled to use the vacancy process? How about 21 days? Probably not because he'd be outside the eight days. Well, he was outside the eight days here. So, but the point of the matter is, and I understand the intuitive argument. I do. And I've argued cases before, and Justice Holdridge has been on some of those cases, where I'm arguing for ballot access. And I agree with that principle. But the election code does put obstacles, and ballot access is limited by the reasonable regulations that are contained. So what are we looking at here? So Mr. Burrow opens a campaign committee, and I think he filed one report out of maybe a half dozen that are required. He kept getting fined continually by the state board. He does not pay those fines for several years. He gets nominated in a caucus. Doesn't tell anybody in the caucus that this is existing. Doesn't pay the fines by the ballot certification date. The township gets notified that one of the people that have done the ballotry certified is on the ballot forfeiture list, on the date of ballot certification, and he's not going to be on the ballot. That cannot be the event that starts the clock ticking to fill the vacancy. Otherwise, if we allow Mr. Burrow to decide when he's going to pay the fines and when he can be on the ballot, I would suggest to the court that we might as well take a match to the requirements of campaign disclosure. Deadlines are there for a reason, and in this particular case, it's one of the reasons I agreed to the emergency hearing on the TRO in the very beginning. This complaint had been filed on February 14th. We got served on the 18th, and we were at a temporary restraining order hearing two days later. I agreed to that because the clerk, my client, needs time to prepare the ballot, and they wanted this resolved and taken care of so they knew who was and was not going to be on the ballot. Those are the strict deadlines that the clerks are operating under. If we follow with the plaintiff's theory here, that he can go ahead and pay, I don't know, because there's no guidelines here for when, under plaintiff's test, that they could pay the fine. Are we going to let them pay two weeks later? Well, what's the matter with three weeks? I mean, what's the difference? I would submit to the court that this should be treated much like a statute of limitations. If you miss the deadline, you miss the deadline. And it isn't like that Mr. Burrow didn't know, because he's been getting these letters for quite a while because he's owed these fines for several years. So, I think the code is very clear. You have to have these fines paid by the ballot certification date or you are not on the ballot for that coming election. Now, Mr. Plaintiff here is arguing, well, but again, the spirit is being upheld. He was no longer on the ballot forfeiture list. If you look at the record, he submitted us a receipt from the Illinois State Board of Elections saying, well, your fine is paid. That letter does not say you're now eligible for the ballot for 2025. It doesn't say you're no longer on the ballot forfeiture list for 2025. It says it's paid. The reasonable interpretation of this is he is not on the ballot forfeiture list for the 2026 primary election. He missed the deadline for 2025 by paying late. He is no longer on the ballot forfeiture list, but that list now kicks over to the 2026 election. If you look at the record for what was sent to the clerk, the State Board of Elections agrees with this interpretation, and we'd ask that you reverse the decision of the trial court in this matter. Thank you very much. You'll have time to reply. Yes, thank you. Thank you. Counsel, you may respond. Thank you, Your Honors. May it please the court this morning. I'd like to take just a minute to talk about the motion to dismiss, which you took under advisement, if I could just for a minute. This court can find that the clerk's appeal is moot because the election was almost one year ago, April 1st last year, and Mr. Guerrero, who is with me today in the courtroom, has been serving as the supervisor of Joliet Township for this past year. Of course, the public interest exception to the mootness doctrine allows the court the flexibility to reach the merits of the case, which would otherwise be moot if the question presented is of a public nature, which it is, and if the question is likely to recur, which it's not. Of course, this court should not render an advisory opinion. Why isn't it likely to recur? We don't just focus on Mr. Guerrero. It's whether it could happen again. This is simply because, as the appellant cited in his brief, there's no cases on this point, and there's a reason there's no cases on this point. It's because it doesn't occur. So if it hasn't occurred, I think there's a high probability that it's not going to reoccur because county clerks don't take the actions that this county clerk did. I also don't think that this court, with all due respect, can remove Mr. Guerrero from office or order a new election. Of course, the court can do as it pleases, but history tells us, at least in the last 50 years, that no jurisdiction in Illinois has ordered a new election after taking someone out of office. It just doesn't happen. The only proper way to remove an elected official from public office is co-oriento under the appropriate statutory interpretation. Interesting, removal from office is the remedy. I have a question. Yes, sir. Your argument about not likely to happen, so therefore, okay, it's your position. Yes, sir. Okay. Well, the proof is in the pudding, isn't it? It happened, didn't it? It did happen. Okay. It did happen, sir. Is there an argument for clarity in the law for something that has happened that has caused a great amount of litigation? Yes, it's caused too much litigation, quite frankly. I don't think so because the law is clear. As Judge Breslin found, very succinctly, the law is clear in regards to payment of fines and as to what Section 9-30 talks about, which I'll talk about in a minute. The remedy here, it's very interesting, the remedy that the state attorney asked for in response to my motion to dismiss is removal from office or a new election. That's interesting because in his brief, he has not asked for removal of office or a new election. What's the remedy? It's after the election. There is no remedy because there was no fault. Well, I think accepting its move, the question is whether this is a public interest exception. Yes, sir. So let's assume for the sake of the rest of your argument that there is a public interest exception. Okay. All right. I just wanted to make that point on my motion to dismiss and just call your attention, there is a case from this district in 2018, Lasomne v. Peoria County Board of Elections, where this court said it's established under Illinois law that the conclusion of an election cycle normally moves an election contest. I mean, that's what happens. I was going to end with this quote, but in light of the argument, I'm going to begin with this quote from Judge Breslin's order. Courts will take great pains to interpret an election statute to define ballot access liberally and reduce restrictions to their most reasonable outer limit. It's directly from a case called Socialist Workers' Party v. Chicago Board of Election Commissioners taken from Judge Breslin's decision. And I think it's extremely appropriate, especially in the times we live in now, about restricting candidates' ballot access. That's not what our courts have developed through the last 50 years. Courts have developed being liberal with candidates to put them on the ballot to give the people a choice. You heard Mr. Piles recounting the quote-unquote difficulty Mr. Guerrero had paying his fines in his time and all the notice. How do you respond to the unclean hands argument? I could easily. Mr. Guerrero didn't pay fines. He is not a... He nor his committee have wealth. He is a hardworking gentleman who did run for city council in 2021 and was successful, and then ran for supervisor here and didn't have professional help having him do his campaign disclosures. And he did chalk up a good amount of fines, over $6,000 worth of fines. He just couldn't pay them. And we made that point at the trial court. When push came to shove and the notice came from the county clerk that she wasn't going to certify him for the ballot, he did what he needed to do to get the money, paid the money immediately, and on the same day that the township clerk was given notice from the county clerk that she wasn't going to put him on the ballot, he paid the fine. And the State Board of Elections, on the same day, sent the letter saying, you're good to go, you paid your fine. Now, the State Board of Elections didn't say to the county clerk, put him on the ballot. It's not their job. And the infirmity in the state's argument here is only looking at the first paragraph of Section 9-30, where it says the State Board of Elections shall certify all that language. Well, the State Board of Elections does not certify for a township. They certify for constitutional offices, state offices, and your offices. That's what they certify for. The county clerk certifies for county offices, and the local township clerk certifies for township offices. That's what's in the election code. So the township clerk certified Mr. Guerrero's name to the county clerk, who took it upon herself to decertify him on September 29th when she informed the township clerk that Mr. Guerrero's name will be removed from the ballot. Not that it was removed from the ballot. It will be removed from the ballot. And that's what triggered the rest of the replacement procedure. However, and I perhaps didn't argue this well enough in my brief, there wasn't a need for a replacement because when he paid his fine and the State Board of Elections said you're good to go, you're cleared, the automatic removal that the county clerk used to take him off should have been used to put him right back on. As Justice Brennan stated and asked Mr. Kiles, what does that last sentence mean? That he's off the ballot until it's paid. What does that mean? We still have never heard from the state what their interpretation is. Isn't the language so long as in the statute? The statute says the election jury shall not place upon the ballot the name of any candidate appearing on this list for any office in any election while the penalty is unpaid. While the penalty is unpaid. Well, it was paid. It was paid. And as this court knows, the Supreme Court, the appellate courts, the circuit courts have put candidates on the ballot up to and including the day before the election. It doesn't happen very often the day before, but it certainly happens through the election process and then the county clerk has to pivot and do what they have to do. Now what they've done, quite frankly, instead of reprinting the whole ballot, they have a paper ballot and instructions to the electorate coming in that this person has been added by court order. So, it's not an impossibility. It's something that has to be done when the court orders it to be done. This is early on. The ballots weren't even in the mind of the county clerk to print at this time. This is early, early on in the process. The end of January, election's April 1st, so there was no rush to print ballots. Mr. Guerrero paid the fine in due time. He should have paid it earlier, no question. He just wasn't someone of means either monetarily or having sufficient help to comply with the  as he should have. So, the first date that the township clerk was notified by the county clerk that Mr. Guerrero's name would not be placed on the ballot was January 29th. And again, to reiterate, the county clerk told the township clerk, who is the local election authority, and please note, there's a real difference here. An election authority is the county clerk. The local election authority by statute, the election code, is the local election authority. In this case, the township clerk because it was a township election. The township clerk certifies the ballot when she gets all the nomination papers, the caucus papers, she makes up a certification and she sends it to the county clerk and the county clerk uses that certification to print the ballot and run the election. That's simply, that's how it works. So, the county clerk is not the certifying authority. The township clerk is. The township clerk received notification, payment was made, the state board sent the letter, she conveyed that to the county clerk, the county clerk said no, still not going to put them on the ballot. So, I'll ask a question about that.  Can the county clerk go beyond the four corners of the papers that are presented to her? I mean, she went outside the four corners based on her knowledge of what happened previously. I mean, there was no objection filed within five days. And that's the process, right? The process is, someone could have filed an objection against the candidacy. And that's how it gets played out. But absent that, if the nominating papers and everything are within the four corners of the ballot, and those papers said it was done within eight days, that's it. The clerk can't go outside of that and say, I think it was more than eight days. No, you're right, that's the end of the story. What the state confuses... Well, what you're talking about, it's a ministerial act. Correct. Yes, sir. What the state confuses here is that the county clerk, as well as the township clerk, can't go beyond the four corners of the document. The apparent authority law that we've developed in this state is very clear that the certifying authority, in this case the local election authority, the township clerk, could look at the papers and say, there's a real bad mistake. He didn't number his pages. Or he didn't put his name on the paper. Something apparent. She then, the local election authority, not the county clerk, can say, I'm not certifying you to the county clerk because you didn't comply with the statute. She can't go beyond, which is what the county clerk did, exceeded authority she didn't have. That's real... Well, that's what a ministerial act is. When you define a ministerial act, you don't use your own discretion. No. That's correct, Your Honor. And that's what Judge Breslin found. That's why she granted the mandamus, compelling the clerk to do her duty. Will I be given time to talk about the Cross Appeal? Yes. You can proceed right now. Pardon me? You can proceed right now. Sure. It's really... But you do get five minutes. That's it. Oh, do I? Why not I do that? I respectfully ask that Judge Breslin be firm. This is a very important ballot access case. Very important access case. So important that we might accept mootness. It could be. And quite frankly, that's a good point, Your Honor, because I would prefer a decision in this law so this doesn't happen again. However, you're compelled to do what you think you need to do as far as this question. Thank you, and I'll be back just for a brief time on the Cross Appeal. Thank you. Counsel Klaus, you may reply and respond. I don't think this case is moot. As I stated earlier, this is likely to reoccur. In fact, in the record, there's an indication that there were two or three other candidates just in this cycle that had the same problem as the plaintiff, and they were kept off the ballot because they did not pay their fines by the ballot certification date. Section 9-30, the first paragraph sets out the requirement, and the second paragraph has the mechanism.  those other examples, are they in the record? Are they in the record? There's a reference during some of the hearings that we told the trial court, you know, there are other people that are in the same boat, and we need to have some clarification on this. I don't think there's any specifics. In the record, there are other Will County campaign committees that are on the forfeiture list. So, justices, I don't know... But we don't know if they paid their fines or not. I don't know if it's in the record. One person, I think, did pay. We think, but we don't really know. It's not, yes. There was another case filed. 9-30 has a deadline. The fine has got to be paid by the ballot certification date. The plaintiff's physician wants to write that out of the requirement. They want to say it was unpaid, or that it was paid. And I guess, you know, from a county clerk's perspective, we would like to know if it's going to be paid after the ballot certification date, then when is it permissible to go ahead and pay? Is it a week? Is it 10 days? Is it a month? And, you know, Mr. Orelson in his argument says, well, there's no rush. Well, yeah, there is a rush. There is a rush to get this done. That's why I agreed to the hearing in two days. The clerk needs the time to prepare the ballots. I agreed on an expedited basis to have this for this exact reason. It is a rush. Mr. Orelson in his temporary restraining order said, this is a rush. This is an emergency for him to get up here to say today, well, there was no rush. Certainly was a rush. Mr. Orelson had indicated in his Now, the plaintiff and the trial court's interpretation of 9-30 has another issue. If we were to go with the plaintiff's position in this case, one set of candidates are going to be able to get back on the ballot because there will be an appointment process and a filling vacancy process that's available to the party candidates. But if it's a nonpartisan candidate that doesn't pay by the ballot certification date and then they go ahead and pay their final week late, there is no mechanism for them to get back on the ballot because there is no process for them to fill a vacancy. The interpretation of the trial court and the plaintiff in this case treats partisan candidates and nonpartisan candidates differently because the partisan candidates still can fall back on the vacancy process. They can have a committee get together. They pay their fine and then according to what happened here they can be placed on the ballot where a nonpartisan candidate that doesn't have the vacancy process or the party vacancy process available to them, the nonpartisan candidate that pays their final date, they would not have that vacancy filling process available to them. The interpretation of the statute treats those candidates differently. The interpretation put forward by the clerk in this case avoids that problem. The date by ballot certification date, the fine must be paid by the ballot certification date is the deadline and that doesn't cause any problems with treating the candidates differently. That's why I think the deadline means something at the end of the statute. Mr. Olson, this is not likely, this is not moot. Actually, I think both sides, there needs to be clarification on this issue. Can you pay a fine after the ballot certification date and go ahead and be on the ballot even though Mr. Brewer on this case got repeated letters that if you don't pay them by the ballot certification date, you're not going to be on the ballot. Mr. Powell, what do you say about this argument that under 761 the clerk should not have gone beyond the confines of the paperwork she was presented and do her own calculation on the eight days? Well, there's an election calendar that is put out by, to all the, she had to go outside the four corners of the paperwork presented to say, I disagree. I believe that more than eight days went by when this nomination was approved. I think that yes, they have to go outside the four corners of the document. That's just not ministerial. Well, let me give you another example of how this would work. What if somebody came in and their the petition dates have passed, the objection period has passed, somebody shows up at the clerk's office and they've got nominating papers and a statement of candidacy, I want to file these. Do you look beyond the four corners of the documents of whether or not to accept that petition page? Obviously, if there's a deadline and the petition time has passed, you have to say, no, I'm sorry, the time has passed. You can't let somebody come in and even though they've got all the required documents, the race might be up in that particular section, but they come in two or three weeks after the petition deadline has passed, somebody says, I want to run for this office. Does the clerk have to go beyond the four corners of that document? Yeah, because the election calendar says this is supposed to be done at a certain date. I'm not sure it's a perfect analogy. Let me ask you a slightly different question. Certainly. What do you say to Mr. Odelson's argument that if somebody was to look at this and decide it wasn't appropriate, it was the township clerk's duty, not the county clerk's duty in this particular situation? The section 9-30 is the election authority. In the second paragraph, it is the election authority shall not place upon the ballot the name of any candidate appearing on this list for any office in any election while the penalty is unpaid. While the penalty is paid, unless the candidate has requested a hearing and the board has not disclosed the matter by the date of certification. That's the deadline. Yes, Mr. Mr. Guerrero paid his fines, but he paid them too late. The statute says you have to have the fines paid by the date of ballot certification. Again, as I talked about earlier, there's a problem if we're going to allow the late payment beyond the statute. Again, I don't want to reiterate rules that this court has said time and time again. Courts cannot read exceptions and limitations into the statute. The statute does not indicate that you can pay late, or if you make a payment, then you can go ahead and utilize the vacancy process. That is not in the statute, and I think that it's very clear, and this court has made clear in many different cases that the trial court in this case made an exception. He paid after the ballot certification date, and I think ballot access, and I think that there are a lot of problems that are associated with that argument. Any further questions? No, thank you. Okay. Thank you. Thank you, counsel. Mr. Oldison? Mr. Guerrero filed a three-count complaint. I'm now here on count three, which was dismissed by the trial court, but I want to step back, and I'm so glad I have this opportunity to talk to the appellate court about what happened after Judge Breslin made her decision. The state pulled a little trick that I didn't know about. That is, they then demanded a jury trial on count three, which removed it from Judge Breslin's room after she decided favorably for the candidate, put it into another court for a jury trial. The day after the transfer, the state filed a motion for judgment on the pleadings. Well, that doesn't sound like a jury to me. The court, Judge Barrett, ruled that the judgment on the pleadings was improper because there were contested factual issues. The state denied the complaint filed in count three. Mr. Guerrero denied the affirmative defenses. There were material facts all at issue. So, the judge did the right thing and denied the motion for judgment on the pleadings. Three months later, in state discovery, three months later, the state comes back and files a motion for summary judgment. No facts had changed, no discovery had taken place, nothing changed. The judge reversed himself, granted the motion for summary judgment without any explanation or justification in the record other than the defendant county clerk followed the law. Case dismissed. Well, I have no choice but to appeal that because we didn't get an opportunity to air out our count three against the clerk because of the summary dismissal while many material facts, all the material facts were still pending. So, we just want the opportunity to go back and have the jury trial that the state requested. That's what they wanted, that's what they should get, and that's what we want. I do. So, you're no longer arguing that the Tort Immunity Act does not apply. I'm sorry? You're no longer arguing that the Tort Immunity Act does not apply. That's correct. That's correct. You want the opportunity to go back and do discovery and show World War I. Yes, and I believe we can do that because it was not brought out in the record but this really wasn't the county, there's more at play here, Your Honor, since it's not proper for me to comment, it's not in the record, but the county clerk really wasn't the person at fault here. She was given some not appropriate advice and then acted on that advice to deny ballot access and it really infuriates me that at this day and age we still have, the state is taking it upon itself, not in the objection cases Justice Brennan talked about, upon itself to try to throw people off the ballot. Really? In this day and age. So, I would ask you reverse the summary judgment finding on count three and send that back. Thank you, Your Honor. Unless there's any questions. Thank you. Any response? This is a cross. It's a cross because you actually got the last word on it. I know. I just want to clarify that for you. Okay, well thank you counsel both for your spirited arguments in this matter this morning. It will be taken under advisement and a written disposition shall issue. The court will stand in brief recess.